# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>IN THE MATTER OF THE SEARCH OF ONE BLACK APPLE IPHONE LOCATED AT 1801 STANLEY RD SUITE 300 GREENSBORO, NC | )<br>)<br>) Case No. 1:24MJ203-1<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Middle_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute a controlled substance |
| 21 U.S.C. § 841(a)(1) | Possession with the intent to distribute a controlled substance |

The application is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ ALYSON HALONEN
*Applicant's signature*

Alyson Halonen, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 05/23/2024  8:47 am

*Judge's signature*

City and state: Durham, North Carolina

United States Magistrate Judge Joe L. Webster
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Alyson Halonen being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since August of 2022. I am currently assigned to the Charlotte Field Division, Greensboro I Field Office. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses. Prior to my career with ATF, I worked for the Wilmington Police Department in North Carolina for approximately four years as a patrol officer. I am a graduate of The University of North Carolina at Wilmington, as of 2014, with a Bachelor of Arts Degree in Criminology.

3. I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing narcotics, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among narcotics traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with numerous investigations regarding the unlawful possession, use, and distribution of narcotics during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use of search warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black Apple iPhone, hereinafter the "**Target Device**." The Device is currently located at The ATF Greensboro Field Office. A photograph of the **TARGET DEVICE** has been attached to this application for further identification.

6. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. In the beginning of April 2024 an ATF Confidential Informant[1] (herein identified as CI), provided information to the ATF Greensboro Field Office in reference to an individual identified as NICHOLAS WILLIAM SHELLEY. The CI indicated that SHELLEY lived in Winston-Salem, NC and was a source of supply for methamphetamine in the area. The CI also identified SHELLEY's phone number as 336-920-XXXX and shared text communications exchanged with SHELLEY corroborating that SHELLEY was selling methamphetamine. A query of the telephone number 336-920-XXXX (the same number referenced above) through a law enforcement intelligence database revealed that it was associated with SHELLEY.

---

[1] The CI has a known criminal history and is a paid confidential informant.

8. During the course of the investigation, the ATF Greensboro Field Office has utilized the CI to conduct multiple controlled purchases of methamphetamine from SHELLEY. The first of these transactions occurred on April 15, 2024. On this occasion, SHELLEY instructed the CI to meet him at Weatherwood Apartments in Winston-Salem, NC to conduct the transaction. SHELLEY agreed to sell the CI one ounce of methamphetamine for $250.00. The CI was provided with funds to complete the transaction and equipped with electronic surveillance equipment capable of recording audio and video. The CI was then directed to meet with SHELLEY at this predetermined location to conduct the transaction. Prior to the controlled purchase SHELLEY provided information to the CI from phone number 336-250-xxxx (the same number previously referenced) by providing the location of his residence for the CI to meet him at.

9. Agents conducted physical and electronic surveillance throughout the duration of the transaction. Once the CI arrived at Weatherwood Apartments in Winston-Salem, NC. Agents observed SHELLEY exiting 136 Weatherwood Ct., Apartment A, prior to meeting with the CI in the parking lot. SHELLEY then walked over to the CI's vehicle to conduct the transaction. Agents also overheard SHELLEY tell the CI that his source of supply would be arriving within the next few minutes to give him more methamphetamine. After the transaction was complete, agents maintained surveillance on

SHELLEY and observed him meet with a second individual who was believed to be the aforementioned source of supply. SHELLEY was then observed going back inside 136 Weatherwood Ct., Apartment A.

10. The CI returned to meet with agents and turned over a plastic bag containing a white crystal-like substance suspected to be methamphetamine. The substance was field-tested which produced a positive result for the presence of methamphetamine. The packaged weight of the substance was determined to be approximately 26.3 grams.

11. The second controlled purchase was conducted on April 25, 2024. On this occasion, SHELLEY agreed to sell the CI two ounces of methamphetamine for $700.00. SHELLEY again instructed the CI meet him at Weatherwood Apartments. Prior to the controlled purchased SHELLEY contacted the CI from the same phone number, 336-920-xxxx, providing a photograph of suspected methamphetamine on a scale with a weight of 57.32 grams. The CI was provided with currency, equipped with electronic surveillance equipment, and instructed to meet with SHELLEY at this location. SHELLEY and the CI also communicated via telephone on the way to SHELLEY's residence using the same phone number. SHELLEY requested an estimated time of arrival (ETA) from the CI and negotiated the price for the methamphetamine.

12. During pre-operational surveillance, agents observed SHELLEY walking around the parking lot in front of 136 Weatherwood Ct., Apartment A. Upon the arrival of the CI, SHELLEY was observed getting into the passenger seat of the CI's vehicle. SHELLEY then instructed the CI to drive a short distance up the street on Weatherwood Ct. The transaction was conducted as they drove, and SHELLEY got out of the vehicle at the next intersection.

13. The CI returned to meet with agents and turned over a plastic bag containing a white crystal-like substance suspected to be methamphetamine. This substance was also field-tested which produced a positive indication for the presence of methamphetamine. The packaged weight of the substance was determined to be 49.4 grams. On Thursday, May 16, 2024, the lab results from the Drug Enforcement Administration (DEA) were received and the 49.4 grams tested positive for methamphetamine. After the controlled purchases SHELLEY continued to contact the CI from 336-920-xxxx with numerous phone calls regarding more purchases of methamphetamine as well as attempting to purchase a firearm from the CI.

14. On May 10, 2024, SHELLEY was arrested by Winston-Salem Police Department for numerous outstanding State arrest warrants issued by Forsyth County. The **TARGET DEVICE** was located on SHELLEY during the arrest.

15. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICE** first came into the possession of the Winston-Salem Police Department.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and

other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/S/ ALYSON HALONEN
Special Agent Alyson Halonen
Bureau of Alcohol, Tobacco,
Firearms and Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 23rd day of May, 2024, at 8:47 a.m.

_____
Honorable Joe Webster
United States Magistrate Judge
Middle District of North Carolina

# ATTACHMENT A

The property to be searched is a black Apple iPhone, hereinafter the "Target Device." The Device is currently located at

a. **TARGET DEVICE**: a black Apple iPhone

 

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.  All records on the **TARGET DEVICE** described in Attachment A that relate to violations of 21 United Staes Code Section 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same) and involve SHELLEY in the form of:

    a.  Electronic communication between SHELLEY and co-conspirators referencing controlled substances;

    b.  lists of customers for the distribution of controlled substances and related identifying information;

    c.  types, amounts, and prices of controlled substances trafficked as well as dates, places, and amounts of specific transactions;

    d.  any information related to sources of controlled substances (including names, addresses, phone numbers, or any other identifying information);

    e.  Photographs, videos or other description or depiction of controlled substances.

    f.  any location or other information recording SHELLEY's schedule or travel from April 1, 2024 to the present;

    g.  all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.